This Court granted certiorari review to determine whether convictions as to which a "full" pardon has been given can be used for sentence-enhancement purposes under the Habitual Felony Offender Act. We hold that a full pardon precludes such use of the pardoned convictions. Therefore, we reverse the judgment of the Court of Criminal Appeals, and we remand the case for further proceedings consistent with this opinion.
In 1982, Nathan Casey was convicted of first-degree robbery and was sentenced as a habitual offender to life imprisonment without parole. His sentence was enhanced upon application of the Habitual Felony Offender Act because he had six prior convictions for forgery. In 1999, Casey filed his third Rule 32, Ala.R.Crim.P., petition for postconviction relief. He alleged that the trial court lacked jurisdiction to impose the sentence and that the sentence exceeded the maximum allowed by law. Casey argued that the Alabama Board of Pardons and Paroles had granted him a "full and unconditional pardon" as to his six forgery convictions, and he argued that that pardon prevented the use of those convictions for sentence-enhancement purposes under the Habitual Felony Offender Act.
The trial court found no merit in Casey's petition and summarily denied the petition. Casey appealed to the Court of Criminal Appeals. On April 28, 2000, the Court of Criminal Appeals released an opinion holding that the pardoned convictions could not be used for sentence enhancement under the Habitual Felony Offender Act and remanding the case to the trial court for resentencing without any enhancement based on the forgery convictions. However, on the State's application for rehearing, the Court of Criminal Appeals withdrew its April 28, 2000, opinion and substituted a new opinion, which affirmed the judgment of the trial court. Casey v.State, 852 So.2d 168 (Ala.Crim.App. 2001).
On certiorari review, this Court has determined that the April 28, 2000, opinion released by the Court of Criminal Appeals correctly identified and applied the controlling precedents. The judgment of the trial court and the opinion of the Court of *Page 177 
Criminal Appeals on rehearing relied on Mason v. State, 39 Ala. App. 1,103 So.2d 337 (1956), aff'd, 267 Ala. 507, 103 So.2d 341 (1958), cert.denied, 358 U.S. 934 (1959), which was overruled by State ex rel. Sokirav. Burr, 580 So.2d 1340 (Ala. 1991), and on Johnson v. State,421 So.2d 1306 (Ala.Crim.App. 1982), which was based solely on the later-rejected rationale of Mason.
In its initial opinion, written by Presiding Judge McMillan, the Court of Criminal Appeals provided the following well-reasoned and clearly written analysis of the effect of a pardon upon the use of the pardoned convictions for sentence-enhancement purposes:
 "On April 3, 1999, [Casey] filed the instant petition, alleging that the Constitution of the United States and the Alabama Constitution require that he receive a new trial or new sentence proceeding, and that the trial court was without jurisdiction to render a judgment or to impose sentence in his case. In support of his petition, [Casey] filed a memorandum alleging that, in 1974, he was granted a `full and unconditional pardon' by the Alabama Board of Pardons and Paroles as to his six prior convictions, which prevented his six prior convictions from being used to enhance his 1981 conviction for first-degree robbery under the Alabama Habitual Felony Offender Act.
 "In its order dismissing [Casey's] petition, the trial court stated:
 "`Having considered the Petitioner's Petition for Relief from Conviction of Sentence, the Court's own records, and the State's Answer to the Petitioner's Petition, this Court finds that the claims in Casey's Rule 32 petition are without merit and denied. Specifically, this Court finds, as follows:
 "`Petitioner claims that because the Petitioner received a pardon from the State Pardons and Parole Board and his civil and political rights were restored accordingly, . . . those convictions should not have been used to enhance his Robbery I conviction under the Alabama Habitual Felony Offender Act, Sec. 13A-5-9, Code of Ala. 1975. The law has been long established in Mason v. State, 39 Ala. App. 1, 103 So.2d 337 (1956), and Johnson v. State, 421 So.2d 1306 (Ala.Cr.App. 1982), that a pardon merely restores the defendant to his civil rights. Had it been granted before a term of imprisonment, it also relieves defendant of that. But it does not strike from the record his conviction or the fact that he was convicted. Therefore, the fact that Casey received a pardon on his six prior felonies is not relevant when considering those six felonies for enhancement purposes under the Habitual Felony Offender Act and, therefore, his petition on those grounds is without merit and DENIED.
 "`Petitioner has raised jurisdictional questions on appeal or requests for post-conviction relief concerning his sentence. The Court further finds that the issues raised in this Rule 32 [are] precluded under Rule 32.2(b) since Petitioner has raised similar grounds before and is further precluded under Rule 32.2(a)(4) and (5) since Petitioner has raised or addressed [those issues] or could have raised but [did not raise them] on appeal. . . .'
 "The trial court cited Mason v. State, 39 Ala. App. 1, 103 So.2d 337 (1956), as authority for its ruling that a pardon of prior convictions is irrelevant when considering those convictions for sentence-enhancement purposes. The holding in Mason, however, has been specifically *Page 178 
overruled by State ex rel. Sokira v. Burr, 580 So.2d 1340
(Ala. 1991); therefore, this case must be remanded to the trial court.
 "In State ex rel. Sokira v. Burr, the Alabama Supreme Court addressed the question whether a defendant, who in 1962 had pleaded guilty to the crime of distilling and had been sentenced to one year and one day in the state penitentiary for that offense, with one year's probation, and who in 1964 was pardoned with an express restoration of his civil and political rights, was disqualified from holding the office of mayor. The certificate of pardon issued by the Board of Pardons and Paroles restoring the defendant's rights stated:
 "`ORDERED that all disabilities resulting from the above stated conviction be and they are hereby removed and the civil and political rights of the above named are restored.'
"Id. at 1341.
 "In holding that the Board of Pardons and Paroles, through that order, expressly restored all of the defendant's civil and political rights, and that, therefore, the defendant could hold the office of mayor, our Supreme Court reasoned:
 "`Chief Justice Marshall, writing for the United States Supreme Court recognized that "a pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." United States v. Wilson, 7 Pet. 150, 159, (32 U.S.), 8 L.Ed. 640
(1833). In Ex parte Garland, 4 Wall. 333, 380-81 (71 U.S.), 18 L.Ed. 366 (1866), Justice Field, writing for the United States Supreme Court, expressed the following view of the effect of a pardon:
 "`"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offenses. . . . [I]t removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
 "`"There is only this limitation to its operation; it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment."'
"580 So.2d at 1342. The Supreme Court reasoned further:
 "`In Hogan [v. Hartwell, 242 Ala. 646, 7 So.2d 889
(1942)], this Court considered whether an individual who had been convicted of a felony and subsequently had been pardoned and given "all Alabama Civil and Political Rights" was eligible to hold the office of city commissioner of Mobile. Chief Justice Gardner, writing for this Court, stated that Ala. Const. (1901), art. IV, § 60, did not forever prohibit one convicted of a felony from holding office in this State. Quoting 39 Am. Jur. 554, 556, he continued:
 "`"`The doctrine has generally been accepted by the courts that a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen' and this includes restoration to the `pardoned offender his eligibility for state elective *Page 179 office which was forfeited by his conviction.' (Emphasis added, citation omitted [in State ex rel. Sokira].)"
"`242 Ala. at 651, 7 So.2d at 892.
"`. . . .
 "`. . . In 1958, this Court effectively reversed its holding in Hogan when it affirmed the decision of the Court of Appeals in Mason v. State, 39 Ala. App. 1, 103 So.2d 337 (1956), aff'd, 267 Ala. 507, 103 So.2d 341
(1958), cert. denied, 358 U.S. 934, 79 S.Ct. 323, 3 L.Ed.2d 306 (1959). In Mason, the defendant was convicted of owning or possessing a pistol after his previous conviction of second degree murder, for which he had been pardoned. Judge Harwood, writing for the Court of Appeals, called the issue "original, as far as our decisions are concerned," and attempted to distinguish the case from Hogan. 39 Ala. App. at 2, 103 So.2d at 338. The Court of Appeals recited what this Court had said in Hogan:
 "`"`"[A] person . . . is relieved from the legal consequences of a specific crime,"' and . . . `"a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen."'"
"`39 Ala. App. at 3, 103 So.2d at 339.
 "`However, the Court of Appeals stated that this language "constitute[d] broad generalizations and like all statements of generalities, will lead to paradoxical conclusions if mechanically and literally applied to every factual situation." 39 Ala. App. at 3, 103 So.2d at 339. That court, construing the language of the Uniform Firearms Act, Ala. Acts 1936, Extra Session, Act No. 82, p. 51 (Ala. Code (1940), T. 14, § 174), stated that a pardon of a convicted murderer simply "involved forgiveness and not forgetfulness" and that by enacting the Firearms Act, the legislature intended to "vest in the people of Alabama a real and vital social interest designed to enhance their own protection." 39 Ala. App. at 5, 103 So.2d at 341. In affirming this decision, this Court apparently adopted the principle that it retained the power to decide which unconditional pardons actually restored civil and political rights and which unconditional pardons did not. Justice Coleman dissented, recognizing that prior to 1939, the Ala. Const. (1901), § 124, placed the pardoning power in the governor. That section provided as follows:
 "`"The governor shall have power . . . to grant pardons. . . . Pardons in cases of felony and other offenses involving moral turpitude shall not relieve from civil and political disabilities, unless approved by the Board of Pardons and specifically expressed in the pardon."
"`. . . .
 "`After a thorough review of the Alabama cases addressing the effect of pardons that expressly restore civil and political rights, we now hold that the better reasoned decision is this Court's previously cited case of Hogan v. Hartwell, and we adopt the opinion of United States Supreme Court Justice Field, in Ex parte Garland, where he stressed that a pardon, expressly restoring to an individual his civil and political rights, removes the disabilities that accompany a conviction. Justice Field wrote that the effect of the pardon is "to relieve the petitioner from all penalties and disabilities attached to the offense" and said that "to exclude him, by reason of that *Page 180 
offense, from continuing in the enjoyment of a previously acquired right, is to enforce a punishment for that offense notwithstanding the pardon." Ex parte Garland, 4 Wall. (71 U.S.) at 381.
 "`By readopting this Court's decision in Hogan, we recognize that a pardon that restores to an individual all civil rights and political privileges necessarily nullifies all legal punishment for the offense. In other words, if the conviction incorporates certain civil and political disqualifications, then a pardon that specifically revives all civil and political rights must certainly remove any and all legal incapacities. See Ala. Const. (1901), § 124, amend. No. 38.'
"Id. at 1342-45. (Footnote omitted.)
 "Applying this aforestated legal authority to the facts of this case, we conclude that a remand for resentencing is in order. However, it need be noted that:
"`. . .
 "[T]he Double Jeopardy Clause allows a retrial where the reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against the defendant, even where the court also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction. Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988)." Fortier v. State, 564 So.2d 1041, 1042-1043 ([Ala. Crim. App.] 1990). However, we find Lockhart distinguishable from the case at bar.
 "`In Lockhart, there was other evidence, aside from the inadmissible evidence, against the defendant. The defendant . . . was given an enhanced sentence under an Arkansas statute which required the prosecutor to prove beyond a reasonable doubt four prior felony convictions. The prosecutor introduced evidence of four prior convictions; however, one of the convictions had been pardoned by the governor, and was therefore null and void. Although [the defendant] stated at the sentencing hearing that he thought the conviction had been pardoned, there was no actual objection to the introduction of the conviction. 488 U.S. at 36, 109 S.Ct. at 288. Therefore, the Court was able to conclude:
 "`"Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to `obtai[n] a fair adjudication of his guilt free from error.' Had the defendant offered evidence at the sentencing hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of a pardon." 488 U.S. at 42, 109 S.Ct. at 291. . . .'
 "Hooper v. State, 585 So.2d 133, 136-37 (Ala.Cr.App. 1990). See also Ex parte Grantham, 613 So.2d 1260 (Ala. 1993).
 "Here, the pardon restored not only the appellant's civil and political rights, but also removed any legal disabilities incurred as a result of his prior felony convictions. Thus, the trial court erred in considering evidence of the pardoned *Page 181 
convictions for enhancement purposes. See, e.g. Murray v. State of Louisiana, 347 F. 825 (5th Cir. 1965). As this Court held in Love v. State, 681 So.2d 1108, 1109
(Ala.Cr.App. 1996):
 "`"Since the first sentence imposed on [the defendant] was invalid, the trial court had not only the power, but the duty, to sentence [the defendant] as required by law. See, Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)."
 "`(Emphasis in original.) See also, Cline v. State, 571 So.2d 368, 369 (Ala.Crim.App. 1990). This Court in Cline noted that, even after the defendant has begun to serve his sentence, the trial court is obligated to alter an invalid sentence; further, any increase in the sentence does not raise double jeopardy problems.'
 "See also Pounders v. State, 74 So.2d 640, 641-42
(Ala.Cr.App. 1954) (`Where unauthorized sentence is imposed by the trial court, on appeal the judgment of conviction may be affirmed and the case remanded for proper sentence. Upon remandment the court has full power to pronounce proper sentence and such action does not put the defendant twice in jeopardy.')."
We adopt Judge McMillan's analysis in the Court of Criminal Appeals' April 28, 2000, opinion as the opinion of this Court. State ex rel.Sokira is the controlling precedent, and this Court's holding in that case compels the conclusion that the pardon blotted out of existence Casey's guilt with respect to the pardoned convictions, making him, in the eye of the law, a new and an innocent man. Therefore, the pardoned convictions cannot be used to enhance his sentence under the Habitual Felony Offender Act. The contrary holdings by the Court of Criminal Appeals in Bush v. State, 421 So.2d 1352 (Ala.Crim.App. 1982), and Johnsonv. State, supra, are overruled.
The judgment of the Court of Criminal Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, Lyons, Johnstone, and Harwood, JJ., concur.
Moore, C.J., and See, Brown, and Stuart, JJ., dissent.